| | | |
|---|---|---|
| ST. CHARLES SURGICAL HOSPITAL, L.L.C., ET AL | * | NO. 2025-CA-0290 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| LOUISIANA HEALTH SERVICE & INDEMNITY D/B/A BLUE CROSS BLUE SHIELD OF LOUISIANA, BLUE CROSS & BLUE SHIELD OF LOUISIANA, INC. AND HMO LOUISIANA, INC. | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-01095, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Nakisha Ervin-Knott, and Judge Monique G. Morial)


James M. Williams
David R. Sherman
Walter R. Woodruff, Jr.
Daniel H. Edwards
Daniel E. Buras, Jr.
Inemesit U. O'Boyle
Matthew A. Sherman
Patrick R. Follette
CHEHARDY SHERMAN WILLIAMS RECILE & HAYES
One Galleria Blvd., Suite 1100
Metairie, LA 70001

H. Minor Pipes, III
Catherine F. Giarrusso
Katherine Seegers Roth
PIPES MILES BECKMAN, LLC
1100 Poydras Street, Suite 1800
New Orleans, LA 70163
New Orleans, LA 70163

COUNSEL FOR PLAINTIFFS/APPELLEES

Kim M. Boyle
Allen Miller
Rebecca Sha
Clerc Cooper
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130

Richard Allen Sherburne, Jr.
Douglas M. Chapoton
ATTORNEY AT LAW
P. O. Box 98029
5525 Rietz Avenue
Baton Rouge, LA 70898-9029

Shelton Dennis Blunt
A. Paul LeBlanc, Jr.
Michael B. Victorian
PHELPS DUNBAR LLP
400 Convention Street, Suite 1100
Baton Rouge, LA 70802

Martin A. Stern
Leigh Ann Schell
Alexandra R. Lamb
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70193

Thomas More Flanagan
Anders F. Holmgren
Camille E. Gauthier
FLANAGAN PARTNERS, LLP
201 St. Charles Avenue
Suite 3300
New Orleans, LA 70170

Richard C. Stanley
Kathryn W. Munson
Brandon A. Naquin
STANLEY REUTER ALFORD OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112

COUNSEL FOR DEFENDANTS/APPELLANTS

**REVERSED; REMANDED FOR NEW TRIAL**
**January 23, 2026**

This is a fraud and an abuse of rights case stemming from a dispute over commercial medical insurance reimbursement claims. This dispute involves approximately 7,800 claims that an out-of-network provider submitted to a health insurer for reimbursement.[1] Plaintiffs are the Center for Restorative Breast Surgery, LLC ("Center") and St. Charles Surgical Hospital, LLC ("Hospital") (collectively "Provider"). Defendants are Louisiana Health Service and Indemnity

_____

[1] The difference between an "in-network" versus an "out-of-network" healthcare provider has been explained as follows:

> When a healthcare provider has contracted with an insurer to set the prices the insurer and its members will pay, that provider is considered in-network. Insurers generally promise that they will pay the full cost for care from in-network providers, less cost-sharing amounts like copays, deductibles, and the like, which the member pays. An insurer can reliably make such promises because these fixed-price agreements limit the insurer's risk. Out-of-network providers, in contrast, have no agreement with the insurer setting prices in this manner. For care from out-of-network providers, an insurer's contract with its members will set out a formula for determining what it commits to pay. If the out-of-network provider charges more than that amount, the provider can—at least in some instances—"balance bill" the patient for the difference.

*AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 142 F.4th 403, 405 (6th Cir. 2025). Another relevant consideration here is the federal and parallel Louisiana statutes mandating healthcare providers cover certain post-mastectomy breast-reconstruction medical services. *See* 29 U.S.C.A. § 1185b (Women's Health and Cancer Rights Act of 1998); and La. R.S. 22:1077.

1

Company, d/b/a Blue Cross Blue Shield of Louisiana ("LHS") and HMO Louisiana, Inc. ("HMO La.")[2] (collectively "La Blue").

Provider did not sign a contract to participate in the Blue Cross Blue Shield provider network, meaning it is an out-of-network provider with La Blue and other Blue Cross Blue Shield affiliated entities ("Home Plans"). Provider contends that it was not paid to its satisfaction for authorized medical services that it provided to La Blue and Home Plans insureds. Provider further contends that La Blue engaged in a continuous, systematic, sophisticated, and intentional scheme to defraud it.

Following a three-week jury trial, a judgment was rendered in favor of Provider and against La Blue for $421,488,633. La Blue appeals. Based on our finding that the jury instructions on fraud were legally erroneous, we reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

The dispute between the parties has been the subject of protracted litigation, straddling Louisiana state and federal courts. To provide a backdrop for analyzing the myriad of issues presented here, we set forth the following time line.

In 2003, Drs. Scott Sullivan and Frank DellaCroce—two prominent plastic surgeons—founded the Center; the Center is a physician group that specializes in providing post-mastectomy breast-reconstruction medical services to women

---

[2] LHS is a health insurer licensed by the Louisiana Department of Insurance, which administers health insurance benefits for Louisiana residents. LHS also is a registered not-for-profit mutual insurance company with a license to use the Blue Cross and Blue Shield trademarks in Louisiana. HMO La. is a wholly owned subsidiary of LHS; it sells insurance and administers reimbursement claims for Louisiana residents and businesses. In addition to LHS and HMO La., Provider named a third entity as a defendant—Blue Cross & Blue Shield of Louisiana, Inc. But, no such entity exists. It is undisputed there are only two defendants—LHS and HMO La.

diagnosed with breast cancer. According to Dr. Sullivan's trial testimony, the Center was a participating provider with La Blue and Home Plans for a short time after it started business. The Center unilaterally decided to go out-of-network for business reasons, including dissatisfaction with in-network payment rates.

In 2009, Drs. Sullivan and DellaCroce founded the Hospital; the Hospital is a thirty-nine bed, short-term acute hospital out of which the Center's physicians operate. The Center and the Hospital are both New Orleans-based businesses, located on St. Charles Avenue. Drs. Sullivan and DellaCroce also formed a separate billing company—Sigma Delta Billing, LLC—to handle administrative matters, such as insurance claim processing, for the Center and the Hospital (again collectively "Provider").

All of Provider's claims at issue here stem from the same basic underlying facts—its routine providing services as an out-of-network provider to patients insured by La Blue and Home Plans. Before providing its medical services to each La Blue or Home Plans insured, Provider secured medical authorization. The method by which Provider secured authorization differed depending on whether the patient was an in-state patient—a La Blue insured—or an out-of-state patient[3]—a Home Plans insured.[4] For La Blue insureds, the authorization was obtained through La Blue. La Blue provided authorizations by telephone before 2007; after

_____

[3] As pointed out during oral argument before this Court, Home Plans insureds also include some patients who live in Louisiana; this can occur if the patient's employer is an out-of-state company.

[4] As discussed elsewhere in this opinion, this sorting of insureds into two groups based on their insurer—La Blue versus Home Plans—is relevant in multiple respects in this case.

2007, it provided authorizations by using La Blue's web portal—the iLinkBlue portal.[5] For Home Plans insureds, the authorization was obtained by communicating directly with the patient's out-of-state plan—the "Member" Plan. For Home Plans insureds, La Blue functions as a "Host" plan. Generally, the Host plan's role vis-à-vis the Member plan comes into play in the post-treatment, reimbursement phase.

La Blue and Home Plans are separate and independent entities. But, they are all members of the Blue Cross Blue Shield Association—a group of thirty-three independent Blue Cross Blue Shield affiliated entities that operate in various regions of this country. La Blue is the entity that operates in the Louisiana region.

One year after the Hospital opened, in 2010, Provider filed suit in Orleans Parish Civil District Court ("CDC") against not only La Blue, but also multiple Home Plans (the "2010 Suit"). In the 2010 Suit, Provider asserted claims not only on its own behalf, but also as assignee of individual patients. The gist of Provider's claims was that it provided out-of-network services after receiving medical authorization from the respective La Blue and Home Plans and that it was not paid appropriately for its services.

The 2010 Suit was removed to federal court in 2011; it was fully litigated. Provider's attempt to have portions of the 2010 Suit remanded to state court failed.[6] The last iteration of Provider's complaint in the 2010 Suit was the Fifth

---

[5] The Center first obtained access to iLinkBlue in 2007, which was before the Hospital was formed.

[6] *See Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of Louisiana*, No. CV 11-806, 2015 WL 13534222, at *2 (E.D. La. Nov. 9, 2015).

4

Amended Complaint, filed in January 2015. In that Complaint, Provider asserted

the following eight counts:

- Count I: Failure to determine benefits in accordance with the terms of Employee Retirement Income Security Act of 1974 ("ERISA") plans;

- Count II: Failure to supply requested information ERISA requires to be produced;

- Count III: Failure to provide full and fair review under ERISA;

- Count IV: Breach of fiduciary duties of loyalty, disclosure, and prudence under ERISA;

- Count V: Detrimental reliance/breach of oral contract(s) under Louisiana law;

- Count VI: Breach of contract(s) under Louisiana law;

- Count VII: Negligent Misrepresentation(s) under Louisiana law; and

- Count VIII: Fraud under Louisiana law.[7]

In June 2015, the federal district court dismissed most of Provider's ERISA

claims—Counts II, III, and IV—with prejudice. The federal district court also

dismissed Count VIII—the fraud claim—after Provider moved for dismissal of that

claim with prejudice.

In 2016, the federal district court dismissed, on summary judgment,

Provider's breach of contract claim—Count VI—and detrimental reliance claim—

Count V.[8] Also in 2016, the federal district court conducted a jury trial on

_____

[7] In the Fourth Amended Petition, Provider asserted an unjust enrichment claim. The federal district court dismissed the unjust enrichment claim, citing the principle that under Louisiana law when another remedy is available, an unjust enrichment claim must be dismissed. *See Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of Louisiana*, No. CV 11-806, 2014 WL 4930443, at *9 (E.D. La. Sept. 30, 2014).

[8] *See Ctr. for Restorative Breast Surgery, L.L.C, v. Blue Cross Blue Shield of La.,* No. CV 11-806, 2016 WL 9439243, at *10 (E.D. La. Sept. 19, 2016).

Provider's negligent misrepresentation claim—Count VII—as it related to seven bellwether patients. "The jury returned a verdict in favor of the Defendants, finding there was no 'causal connection between the misrepresentation or omission made by the Defendant and the decision to treat [the bellwether] patient[s].'" *Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of Louisiana*, No. CV 11-806, 2017 WL 3308919, at *1 (E.D. La. Mar. 31, 2017) (*unpub.*). Thereafter, the federal district court granted summary judgment, dismissing the remaining negligent misrepresentation claims.

The following year, in 2017, the federal district court entered a final judgment dismissing Provider's 2010 Suit.[9] Although Provider filed an appeal, it dismissed its appeal in August 2017.

In February 2017, before the 2010 Suit was dismissed, Provider filed this suit in CDC against only La Blue (the "2017 Suit"). In the 2017 Suit, Provider asserted four state law claims: (i) breach of contract; (ii) detrimental reliance; (iii) negligent misrepresentation; and (iv) fraud. The 2017 Suit was based on claims that were submitted after January 2015.

Answering the 2017 Suit, La Blue alleged Provider was asserting the same claims it previously asserted, and the federal district court decided, in the 2010 Suit. In response, Provider filed a First Amended Petition to clarify that the claims it was asserting in this suit were separate and distinct claims from the claims it asserted and litigated in the 2010 Suit in federal court. The 2010 Suit was cabined

---

[9] *See Ctr. for Restorative Breast Surgery*, 2017 WL 3308919, at *10.

to claims that were submitted between May 2007 and December 2014. As noted elsewhere in this opinion, Provider's final complaint in the 2010 Suit was its Fifth Amended Complaint, which it filed in January 2015.

In April 2017, La Blue filed a petition in federal district court pursuant to the All Writs and Anti-Injunction Acts seeking to enjoin—as previously litigated and decided—Provider's claims asserted in the 2017 Suit. Agreeing in part with La Blue, the federal district court, the following month, in May 2017, enjoined Provider from pursuing claims for breach of contract, detrimental reliance, and negligent misrepresentation. The federal district court did not enjoin Provider from pursuing a fraud claim because Provider had dismissed its fraud claim in the 2010 Suit.[10]

---

[10] In its ruling, the federal district court enjoined Provider from making the following claims:

> 1. Any claim for breach of oral contract the value of which exceeds $500 in which they allege an oral contract existed by virtue of telecommunication and/or accessing the iLinkBlue web portal;

> 2. Any claim under the theory of detrimental reliance for which: (1) there was no attempt to verify the patient's eligibility and benefits through a verification telephone call or iLinkBlue; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue, but the verification page did not provide the amount the insurer will pay for a specific procedure; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, but a disclaimer stating there was "no guarantee of payment" was played at the beginning of the call, and the [Center and the Hospital] did not request further assurance or clarification about the amount of the allowable charge; and

> 3. Any claim under the theory of negligent misrepresentation for which: (1) there was no attempt to verify the patient's eligibility and benefits through a verification telephone call or iLinkBlue; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue but the coverage summaries did not state the allowable amount or any other procedure-specific information; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, but the [Center and the Hospital] did not ask Blue Cross Louisiana for the allowable amount.

*St. Charles Surgical Hosp., LLC. v. Louisiana Health Serv. & Indem. Co.*, No. CV 19-13497, 2020 WL 634918, at *2 (E.D. La. Feb. 11, 2020), *vacated and remanded sub nom. St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447 (5th Cir. 2021).

Following the federal district court's ruling, in June 2017, Provider filed a Second Amended Petition in the 2017 Suit pending in CDC. In its Second Amended Petition, Provider dismissed the breach of contract, detrimental reliance, and negligent misrepresentation claims; maintained the fraud claim; and added (for the first time) an abuse of rights claim.

In response to the Second Amended Petition, La Blue filed peremptory exceptions of res judicata and no cause of action. La Blue argued that the federal district court's rulings in the 2010 Suit barred Provider's fraud and abuse of rights claims. La Blue further argued that Provider's claims were barred for two reasons:

- Claim preclusion, because the claims arise from the same transaction and occurrences as the claims in the 2010 Suit; and

- Issue preclusion, based on the findings in the 2010 Suit of no misrepresentation, no duty to disclose, no reasonable reliance (all essential elements of fraud); and no contractual relationship (an essential element of abuse of rights).

La Blue also argued that Provider failed to state a cause of action for abuse of rights.

Provider countered that the 2010 Suit was cabined to pre-January 2015 claims and that the federal district court refused to allow it to plead any post-January 2015 claims in that suit.

In December 2017, the trial court denied La Blue's res judicata and no cause of action exceptions. From this ruling, La Blue filed a writ application. Granting the writ, this Court found that the trial court erred in denying the res judicata exception (the "Writ Opinion"). In the Writ Opinion, this Court first observed that Louisiana courts apply federal res judicata law when, as here, addressing the

preclusive effect of a judgment rendered by a federal court. Citing federal jurisprudence, this Court observed that "[t]he rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.*, 18-0052, p. 3 (La. App. 4 Cir. 3/21/18), 317 So.3d 854, 856-57 (internal citations and quotations omitted), *writs denied*, 18-1136 (La. 10/15/18), 253 So.3d 1302; 18-1118 (La. 10/15/18), 253 So.3d 1308.

Finding res judicata applied, this Court observed that "the only difference between the two (2) lawsuits is the claims asserted in the federal suit are alleged to have occurred from 2009 to April 2011, and the claims asserted in the present suit are alleged to have occurred after April 2011. However, the claims that are alleged to have occurred after April 2011 could have and should have been asserted in the federal proceeding[.]" *Id.*, 18-0052, p. 5, 317 So.3d at 858. Hence, "[Provider's] claims for fraud and abuse of process are barred by the doctrine of res judicata because the claims arose from the same set of facts and circumstances as the claims litigated and disposed of in the federal proceeding." *Id.*, 18-0052, p. 4, 317 So.3d at 857. This Court also found no error in the trial court's denial of the exception of no cause of action as to the abuse of rights claim. *Id.*, 18-0052, p. 7, 317 So.3d at 859.

From the Writ Opinion, Provider filed a rehearing application. Granting Provider's rehearing application, this Court, in June 2018, amended and clarified

the Writ Opinion. *Id.* (the "Rehearing Decision"). In its Rehearing Decision, this

Court observed:

> This Court maintains that the trial court erred in denying [La Blue's] peremptory exceptions of res judicata and no cause of action ("the exceptions") only as it concerns those claims arising from facts and circumstances that were the subject of the federal court proceeding, specially claims prior to January 2015. Therefore, this Court modifies its writ disposition, so as to reverse the trial court's judgment and grant the exceptions for those claims arising prior to January 2015, and affirm the trial court's judgment denying the exceptions with respect to those claims arising after January 2015.

*Id.*

Before this Court's Rehearing Decision was rendered, in December 2017, La

Blue sent a letter to all non-participating providers—including Provider—

informing them of the manner in which it would calculate their reimbursement (the

"December 2017 Letter").[11] The December 2017 Letter stated as follows:

> Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc. [collectively La Blue] are notifying you that the method of calculating a [La Blue] member's non-participating provider reimbursement under our member benefit contracts is changing for claims for services rendered on or after January 1, 2018. Specifically, the language of our member benefit contracts, as approved by the Louisiana Department of Insurance, is as follows:
>
> For Non-Participating Providers—The Allowable Charge will be the lowest of:
>
> 1. An amount We establish based on Our choice of Medicare's published fee schedule, what Medicare pays, or what Medicare allows for the service;
>
> 2. An amount We establish; or
>
> 3. The provider's billed charge.

---

[11] Two identical letters were sent to Provider, both in the month of December 2017—one dated December 4, 2017; the other, December 21, 2017. For ease of discussion, we refer to the two letters singularly as the "December 2017 Letter."

Thereafter, on November 7, 2019, Provider, with leave of court, filed the Third Amended Petition—the last iteration of its petition in the 2017 Suit. Beyond re-alleging its fraud and abuse of rights claims, Provider pled that it waived recovery for any fraud or abuse of rights claim that it may have in connection with federally-insured patients. Indeed, Provider included an entire section in its Third Amended Petition—labelled "The Claims of [Provider] are Exclusively State Law Claims"—devoted to disclaiming reliance on any federal law in this case. In this section of its petition, Provider averred as follows:

79. This case arises and is brought exclusively under the laws of Louisiana, not the laws of the United States. Nothing pleaded herein alleges any relief governed by or available pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* or the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.,* or federal common law, or any claims involving a federal officer. To the extent that any such claims may be even implied, [Provider] expressly reject[s] such implications and expressly state[s] that [it] do[es] not and will not seek damages for any such claims and expressly waive[s] same.

80. [Provider's] claims do not relate to employee welfare benefit plans subject to federal law pursuant to either ERISA, 29 U.S.C. § 1132(a), or FEHBA, 5U.S.C. §8901 *et seq.,* and [Provider] expressly waive[s] same. Further, [Provider] do[es] not challenge the benefit that may be owed to the patients. Finally, [Provider] specifically do[es] not seek any coverage determination or finding as to what benefits may be owed/not owed under any insurance policy to or on behalf of [its] patients. [Provider] specifically refuse[s] to plead and expressly waive[s] any rights [it] may have against [La Blue] under any and all federal laws, either independently or on behalf of [its] patients.

81. [Provider] do[es] not seek to recover for alleged underpayments of health benefits owed to [its] patients or for [its] patients and expressly waive[s] same. [Provider] do[es] not seek to enforce rights or recover benefits under the terms of any insurance policy.

82. [Provider] do[es] not seek to recover benefits under ERISA for [its] patients and expressly and hereby waive[s] same.

…

11

86. [Provider] [is] not, do[es] not, and will not make a claim against [La Blue] either expressly or impliedly under ERISA. [Provider] [is] not and will not make a claim against [La Blue] either expressly or impliedly based upon assignments regarding claims [La Blue's] customers may have against [La Blue] and hereby expressly waive[s] same.

On the same day as the Third Amended Petition was filed (November 7, 2019), La Blue removed the case to federal court. According to La Blue, it filed the removal petition because, contrary to Provider's disclaimer in its petition, Provider, in discovery, in October 2019, produced a spreadsheet of patient transactions alleged to be at issue that involved FEHBA or ERISA plans. Given the inclusion of patient transactions that La Blue administers under color of federal officer pursuant to FEHBA, La Blue removed the case based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1); and based on the inclusion of patient transactions that involve La Blue plans governed by ERISA, La Blue removed the case based on federal question jurisdiction, 28 U.S.C. § 1331. Summarizing, La Blue argued in its removal petition that federal subject matter jurisdiction exists for two reasons: (i) Provider's claims are preempted by ERISA and FEHBA; and (ii) removal is proper under the federal officer removal statute.

One month later, in December 2019, Provider filed a motion to remand to state court. Provider argued that the federal court lacked subject matter jurisdiction over this matter because its claims were not preempted; the federal officer removal statute was not applicable; and La Blue's removal was not timely. Provider contended that its discovery responses were inadvertent, citing the express waiver in its Third Amended Petition of all federal claims and any damages in connection with FEHBA-governed health insurance plans.

In February 2020, the federal district court judge—Susie Morgan ("Judge Morgan")—granted Provider's motion to remand to state court. Providing extensive reasons (the "First Remand Ruling"), Judge Morgan observed that there was no complete ERISA preemption:[12]

> Having considered all the relevant factors in the ERISA preemption inquiry, the Court finds "coverage and benefit determinations are not implicated [by the [T]hird [A]mended [P]etition's added allegations concerning "medical necessity" and "authorizations"]." Further, the [T]hird [A]mended [P]etition's added allegations concerning "ERISA-related procedural requirements" do not implicate the right to payment under the terms of a benefit plan. As a result, [Provider's] allegations do not cause [Provider's] claim to fall within the scope of ERISA § 502(a)(1)(B), and [Provider] lack[s] standing to bring [its] claims under ERISA. [Provider's] claims implicate legal duties independent of ERISA. Similarly, [Provider's] claims do not address an area of exclusive federal concern, nor do they directly affect the relationship among traditional ERISA entities. Blue Cross Louisiana Defendants have failed to carry their burden of establishing [Provider's] claims are preempted under ERISA.

*St. Charles Surgical Hosp.*, 2020 WL 634918, at *14. Judge Morgan additionally held that La Blue was not entitled to removal under the federal officer removal statute.[13]

---

[12] This section of the First Remand Ruling was titled: "[t]he Court concludes there is not complete preemption under ERISA." The distinction between complete and conflict preemption is discussed elsewhere in this opinion.

[13] Judge Morgan denied Provider's request for attorney's fees pursuant to 28 U.S.C. § 1447(c), observing:

> This issue is a close one. On one hand, [Provider] went out of [its] way to make clear in the third amended petition that [it is] not seeking benefits on behalf of [its] patients and expressly waive [its] right to bring derivative actions under ERISA or FEHBA. In addition, for the reasons discussed above, [La Blue has] failed to provide on point case law supporting the removability of this case. On the other hand, however, "the Court also recognizes that the boundaries of ERISA [and FEHBA] preemption are murky and involve shifting factual circumstances in the caselaw."

*St. Charles Surgical Hosp.*, 2020 WL 634918, at *17.

La Blue appealed Judge Morgan's ruling to the federal Fifth Circuit. But, its appeal was limited, by statute, to only the FEHBA claims;[14] its appeal could not, and did not, include the ERISA claims. Stated otherwise, only the determination of lack of jurisdiction under §1442(a)(1)—under the federal officer removal statute—was appealable; Judge Morgan's other finding rejecting La Blue's removal on federal question jurisdiction, 28 U.S.C. § 1331, was not appealable.

On appeal, the federal Fifth Circuit vacated Judge Morgan's First Remand Ruling and remanded with the following instructions: (i) reexamine whether removal pursuant to federal officer removal statute is warranted under the recently clarified jurisprudential test; (ii) determine whether the express waiver pled by Provider of FEHBA-governed claims is enforceable; and (iii) determine whether Provider's waivers defeat federal officer jurisdiction. *St. Charles Surgical Hosp.*, 990 F.3d at 451.

On the day prior to the remand hearing before Judge Morgan (July 5, 2021), Provider filed a stipulation by its then attorney, James Garner ("Mr. Garner"), who attested:

> 1.    In the matter titled St. Charles Surgical Hospital, L.L.C. and Center for Restorative Breast Surgery, L.L.C. v. Louisiana Health Service & Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana, Blue Cross & Blue Shield of Louisiana, Inc. and HMO Louisiana, Inc., 17-1095, Div. "C," Civil District Court for the Parish of Orleans, State of Louisiana and removed to this Court in St. Charles Surgical Hospital, LLC, et al. v. Louisiana Health Service & Indemnity Company, et al.. No. 19-13497, United States District Court for the

---

[14] "Although an order remanding a case to state court is not generally reviewable, 'an order remanding a case to the [s]tate court from which it was removed pursuant to section 1442 . . . of this title shall be reviewable by appeal or otherwise.'" *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (*en banc*) (quoting 28 U.S.C. § 1447(d)).

Eastern District of Louisiana, [Provider] ha[s] never intended to and will not place at issue any patient transactions involving any FEHBA-governed plans or [La Blue's] liability in connection with those transactions;

2. [Provider] will not introduce testimony or other evidence related to [La Blue's] handling or administration of any FEHBA-governed plans to demonstrate [La Blue's] fraudulent scheme with respect to non-FEHBA governed plans;

3. [Provider is] judicially estopped from placing any FEHBA-governed patient transactions in evidence as part of their showing of the fraudulent [La Blue] scheme;

4. [Provider] will not rely on patient transactions involving FEHBA-governed plans as part of [its] case in chief; and

5. [Provider] further reiterate[s] and confirm[s] [its] prior renunciation and disclaimer of any recovery, damages, benefits, or payments arising from any FEHBA-governed plan.

Provider's stipulation also contained a footnote stating:

In opposing remand, [La Blue] ha[s] not made any arguments, regarding any plan governed or available pursuant to the Employee Retirement Income Security Act of 1974 ('ERISA'). In an abundance of caution, [Provider's] stipulations herein apply to ERISA-governed claims and/or plans as well as FEHBA-governed plans.

Shortly after the remand hearing before Judge Morgan (on July 16, 2021),

Provider submitted a second stipulation signed by its then managing members—

Drs. Sullivan and DellaCroce—who attested:

1. [Provider] ha[s] never intended to and will not place at issue any patient transactions involving any FEHBA-governed or ERlSA-governed plans or [La Blue's] liability in connection with those transactions;

2. [Provider] will not introduce testimony or other evidence related to [La Blue's] handling or administration of any FEHBA-governed or ERISA-governed plans in the above-referenced case.

3. [Provider] will not intentionally request or produce discovery concerning patient transactions involving FEHBA-governed or ERISA-governed plans through written discovery and/or depositions and/or subpoenas. Any production of FEHBA-governed or ERlSA-governed plans through discovery will be deemed inadvertent and should be ignored.

15

4.      [Provider is] judicially estopped from placing any FEHBA-governed or ERISA-governed patient transactions in evidence either in [its] case-in-chief or rebuttal to support [its] claims that [La Blue] committed fraud and/or abuse of rights;

5.      [Provider] further reiterate[s] and confirm[s] [its] prior renunciation and disclaimer of any recovery, damages, benefits, or payments arising from any FEHBA-governed or ERISA-governed plan.

Thereafter, Judge Morgan issued a second remand ruling, again remanding the 2017 Suit to state court; she observed:

The Court finds [Provider's] [T]hird [A]mended [P]etition does not include any federally-governed claims and, alternatively, that [Provider's] waivers of such claims are valid and enforceable. Furthermore, the Court finds [Provider's] production of documentation related to federally-insured transactions in the state court proceeding was inadvertent. Because no federal officer jurisdiction is implicated, the Court need not address whether [Provider's] claims are removable because [La Blue] "acted under" the Office of Personnel Management ("OPM") or whether the alleged conduct underlying [Provider's] fraud and abuse-of-rights claims was connected or associated with (or related to) any federal directive from OPM.

*St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.*, No. CV 19-13497, 2021 WL 3077043, at \*4 (E.D. La. July 21, 2021) (*unpub.*).

Back in state court (CDC), La Blue filed a partial summary judgment motion, seeking to dismiss Provider's claims for fraud or abuse of rights related to patient transactions involving FEHBA and ERISA-governed plans. In support, La Blue cited the language in the Stipulations. In response, Provider filed a "Motion to Withdraw and/or Revoke Portions of Plaintiffs' July 5, 2021 and July 16, 2021 Stipulations."[15] In the Motion to Revoke, Provider sought to remove any language regarding ERISA-governed plans from the Stipulations. Although Provider disagreed with La Blue's contention that the subject language in the

---

[15] In this opinion, these two stipulations are referred to as the "Stipulations"; Provider's motion to revoke the ERISA portions of the Stipulations is referred to as the "Motion to Revoke."

Stipulations could result in a dismissal of any claim dealing with the treatment of an ERISA-governed patient, it filed the Motion to Revoke out of an abundance of caution.

Over La Blue's strong opposition, the trial court, in July 2022, rendered one judgment granting Provider's Motion to Revoke and denying La Blue's partial summary judgment motion.[16] This Court and the Louisiana Supreme Court both denied La Blue's writ applications seeking review of the trial court's rulings on the Motion to Revoke and the partial summary judgment motion. *St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem.*, 22-0588 (La. App. 4 Cir 9/23/22) (*unpub.*), *writ denied*, 22-01590 (La. 12/20/22), 352 So.3d 82.

Thereafter, La Blue filed a summary judgment motion seeking dismissal of Provider's fraud and abuse of rights claims, which the trial court denied. This Court and the Louisiana Supreme Court both denied La Blue's writ applications seeking review of that ruling. *St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.*, 24-0506 (La. App. 4 Cir. 8/15/24) (*unpub.*), *writ denied*, 24-01061 (La. 8/28/24), 391 So.3d 679.

On the eve of trial, La Blue filed an exception of no cause of action based on ERISA preemption. Denying the exception, the trial court cited Judge Morgan's ruling on this "exact issue of ERISA preemption" and observed that "since then, nothing's changed. [Provider has] specifically refused to plead and expressly disclaimed and waived any rights against [La Blue] under any and all federal law."

In September 2024, this matter was tried over a three-week period before a jury. On the morning of the first day of trial, Provider stipulated that given the

_____

[16] For ease of discussion, the trial court's reasons for judgment in connection with this ruling are outlined elsewhere in this opinion.

December 2017 Letter, it was dismissing claims regarding La Blue insureds treated from January 1, 2018, to April 30, 2023. But, Provider reserved its right to damages for La Blue insureds treated from January 1, 2015, to December 31, 2017. Provider also reserved its right to damages for Home Plans insureds treated from January 1, 2015, to April 30, 2023.[17]

Based on the stipulation, Provider filed a motion in limine to exclude from evidence the December 2017 Letter. Although the trial court granted the motion in limine, this Court granted La Blue's expedited writ application and reversed the trial court's ruling. *St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.*, 24-0557 (La. App. 4 Cir. 9/5/24) (*unpub.*), *writ denied*, 24-01101 (La. 9/6/24), 392 So.3d 327. This Court found that the December 2017 Letter was relevant to La Blue's defense of Provider's fraud claim and that the trial court, thus, abused its discretion in granting the motion in limine to exclude it. *Id.*[18] The Louisiana Supreme Court denied La Blue's writ application seeking review of that ruling.

At trial, the parties presented the testimony of multiple witnesses, including experts. The trial court denied La Blue's motion for directed verdict. At the end of the trial, the jury returned a verdict in favor of Provider and against La Blue for $421,488,633, plus judicial interest from the date of judicial demand. The trial

---

[17] As discussed elsewhere in this opinion, the insureds in this case must be divided into two groups—La Blue insureds and Home Plans insureds. The record reflects that most of the claims at issue in this case are based on Provider's treatment of Home Plans insureds.

[18] During trial, two other evidentiary issues were the subject of expedited writ applications to this Court, which were both denied. Given our disposition of this case on the legal issue of the jury instructions on fraud, we find it unnecessary to reach the arguments raised regarding the other evidentiary rulings.

court denied La Blue's post-trial motions for judgment notwithstanding the verdict

and new trial. This appeal followed.

## DISCUSSION

Although La Blue assigns a half dozen trial court errors,[19] we group the

issues presented on appeal into three categories: (i) preclusion issues;

---

[19] La Blue's assigned errors are as follows:

A. The district court erred in overruling La. Blue's exception of res judicata and, by failing to apply the doctrine of issue preclusion, erroneously allowed [Provider] to re[-]litigate essential elements of claims that [it] previously lost in federal court.

B. The district court erred for multiple, independent reasons in entering judgment against La. Blue for fraud. In doing so, the district court improperly excluded evidence (*e.g.*, benefit plans, financial records, and [Provider's] own use of La. Blue for [its] employees). The district court erroneously instructed the jury on the elements of fraud. [Provider] failed to prove any misrepresentation or actionable omission by La. Blue, any justifiable reliance by [Provider], or any legal duty to volunteer facts. And the district court erred in denying summary judgment and directed verdict to La. Blue on [Provider's] fraud claims because of these highly prejudicial failures of proof.

C. The district court erred in entering judgment against La. Blue for abuse of rights because [Provider] failed to show an enforceable contract right that La. Blue abused and because La. Blue acted in accordance with legitimate interests in its dealings with members. For these same reasons, the district court erred in denying La. Blue's motions for summary judgment and directed verdict on those claims.

D. The district court erred in denying La. Blue a directed verdict and then holding La. Blue liable on [Provider's] claims for billed charges for patients with out-of-state plans. La. Blue had no role in preauthorization for such patients and owed nothing for those services. Likewise, the district court erred in holding La. Blue liable for abuse of rights in its capacity as an agent—not a principal—for out-of-state plans.

E. The district court erred in overruling La. Blue's exception, denying its summary judgment motion, and entering judgment on claims that were subject to complete and conflict preemption under ERISA. The district court erred in allowing [Provider] to disavow binding stipulations and pursue ERISA-related claims [it] previously repudiated to avoid a federal forum.

F. The district court erred in denying La. Blue's motion for directed verdict on damages and then awarding over $421 million in alleged damages despite the absence of supporting evidence, where testimony from [Provider's] damages expert was unreliable and unsupported by record evidence, and [Provider] failed to prove causation of special damages. The district court erred in allowing [Provider] to introduce damages evidence (claims data on a jump drive) after resting, even more so where much of the data on the jump drive did not relate to the claims at issue. The court also erred in excluding evidence of a sale of business interests by [Provider's] owners that was relevant to witness bias and showed La. Blue owed nothing. The district court further erred in awarding interest on the total damages

---

(ii) evidentiary and jury instructions issues; and (iii) substantive proof and damages issues. We resolve this appeal on the first two.

**Preclusion Issues**

The preclusion issues raised on appeal are two-fold: res judicata and ERISA preemption.

*Res Judicata*

La Blue contends that the trial court erred by failing to apply the res judicata doctrine of issue preclusion and thereby erroneously allowed Provider to re-litigate essential elements of claims that it previously lost in the 2010 Suit in federal court. La Blue cites the federal district court's grant of summary judgment on Provider's negligent misrepresentation and detrimental reliance claims. Again (as it did in its res judicata exception), La Blue contends that the federal district court found there was no misrepresentation, no reliance, and no duty to disclose—all necessary elements of a fraud claim. Likewise, La Blue contends that the federal district court found there was no contract between Provider and La Blue—a necessary element for an abuse of rights claim.

La Blue acknowledges this Court's Rehearing Decision dismissed many of Provider's claims as barred by the res judicata doctrine of claim preclusion. La Blue, however, contends that this Court, in its Rehearing Decision, failed to apply issue preclusion, which is broader than claim preclusion.[20] According to La

---

award from the date of the original petition—years before most of the alleged wrongs.

[20] *See Amrollah v. Napolitano*, 710 F.3d 568, 571 (5th Cir. 2013) (internal quotation and citation omitted) (observing that "[i]ssue preclusion, also known as collateral estoppel, applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision").

Blue, there were different claims asserted before and after 2015—the date of Provider's last iteration of its complaint in the 2010 Suit—but not different issues. This Court, by limiting the dismissal of claims on res judicata by date, La Blue contends, implicitly confirmed that it was applying claim, not issue, preclusion. Regardless, La Blue contends that the law of the case doctrine does not preclude this Court from revisiting the res judicata issue anew on appeal.

Countering, Provider contends that this Court's Rehearing Decision covered both types of res judicata—issue and claim preclusion. Provider points out that this Court, in the Writ Opinion, discussed issue preclusion, noting that res judicata encompassed "two separate but linked preclusive doctrines"—claim and issue preclusion. *St. Charles Surgical Hosp.*, 18-0052, p. 3, 317 So.3d at 857. In its Rehearing Decision, Provider contends that this Court held that res judicata— including both claim and issue preclusion—only barred its pre-2015 claims. Provider submits that this Court's Rehearing Decision is law of the case.

The question whether to apply the law of the case doctrine is a legal one. *See Pegues v. Morehouse Par. Sch. Bd.*, 706 F.2d 735, 738 (5th Cir. 1983) (observing that "the preclusive effect of the law of the case and *res judicata* doctrines presents a pure legal question . . ."). Law of the case serves several important policies, including: (a) avoiding indefinite re-litigation of the same issue; (b) consistency of results in the same litigation; and (c) efficiency and fairness to both parties in affording a single opportunity for the argument and decision of an issue. *Holmes v. City of New Orleans*, 24-0269, pp. 3-4 (La. App. 4 Cir. 9/26/24), 399 So.3d 827, 830 (internal citation omitted).

As a commentator has noted, the following principles govern the applicability of the law of the case doctrine:

> The [law of the case] doctrine . . . applies to the appellate court's revisit, on a subsequent appeal, of an issue that the court decided in an earlier appeal or after a grant of supervisory writs. However, the doctrine is discretionary and will not be applied where "manifest injustice" would result. The law of the case doctrine should not bar reconsideration where in the interim the law has changed, and the change is retroactive. (internal footnotes omitted).

1A Frank L. Maraist, LA. CIV. L. TREATISE: CIV. PROC.—SPECIAL PROCEED. § 4.7 (December 2025 Update).

This Court recently applied the law of the case doctrine to preclude re-litigation of issues that it previously decided in a rehearing decision. *Bol v. Breda, LLC*, 24-0715, p. 12 (La. App. 4 Cir. 5/16/25), 414 So.3d 1086, 1095. We observed that "[t]he parties in this appeal are arguing the same legal issues applied to the same factual background as in the *Rehearing Decision*" and that this presented a "quintessential factual and procedural scenario for applying the law of the case doctrine." *Id.* (internal quotations and citation omitted). Such is the case here.

The trial court denied La Blue's res judicata exception in full. In the Writ Opinion, this Court granted La Blue's writ, sustained its res judicata exception in full, and dismissed all of Provider's claims. But, this Court in its Rehearing Decision limited its ruling to pre-January 2015 claims—claims not before the federal court in the 2010 Suit. In response to this Court's Rehearing Decision, La Blue applied to the Louisiana Supreme Court for supervisory writs. The Supreme Court denied the writ application. Given these circumstances, this Court's Rehearing Decision is law of the case absent the applicability of an exception to the doctrine.

The multiple exceptions to law of the case doctrine that the jurisprudence has recognized are as follows:

- The doctrine has not been applied "in cases of palpable former error or so mechanically as to accomplish manifest injustice." *Petition of Sewerage & Water Bd. of New Orleans*, 278 So.2d 81, 83 (La. 1973). But, the palpable-error exception is inapposite when "there is merely doubt as to the correctness of the former ruling." *Id.*;

- The doctrine has not been applied "to supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions," *Bank One, Nat. Ass'n*, [*v. Velten*,] 04-2001, pp. 6-7, 917 So.2d [454,] 459 (internal citations and quotations omitted);

- The doctrine has not been applied "when the underlying, operative facts upon which the court's prior decision was based have changed." *Holmes* [24-0269, p. 4, 399 So.3d at 830]; and

- The doctrine has not been applied "against those who were not parties to the litigation at the time the prior decision was rendered." *Marsh Eng'g Inc. v. Parker*, 04-0509, p. 8 (La. App. 3 Cir. 9/29/04), 883 So.2d 1119, 1124 (citation omitted).

*Dunn v. Reg'l Transit Auth.*, 24-0513, p. 10 n.6 (La. App. 4 Cir. 3/11/25), 414 So.3d 754, 760, *writ denied*, 25-00444 (La. 6/17/25), 411 So.3d 632. None of the exceptions apply here. Thus, we find Provider's argument that the law of the case doctrine applies persuasive and decline to revisit the res judicata issue.

*ERISA preemption*

The ERISA preemption issue La Blue raises on appeal has two parts— revoking the Stipulations; and complete and conflict preemption.

Revoking the Stipulations

La Blue contends that the trial court erred in allowing Provider to revoke the ERISA portion of the Stipulations, quoted elsewhere in this opinion. Resolution of this issue turns on the context in which it arose. For this reason, we find it instructive to quote portions of the trial court's reasons for judgment on this issue, which provide that context.

At the outset, the trial court observed that "[m]ost of the damages incurred by [Provider] are related to [its] treatment of individuals with ERISA-governed plans, but [Provider] ha[s] always maintained that its claims are exclusively state law claims." The trial court next observed that when La Blue removed the case to federal court, the federal district court judge initially granted Provider's motion to remand—the First Remand Ruling. Although La Blue appealed that decision, the only issue presented in La Blue's appeal related to FEHBA—not ERISA. Explaining the context in which the Stipulations were made, the trial court observed:

> As a result [of the limited scope of La Blue's appeal], [Provider] voluntarily filed a stipulation in an effort to maintain that [Provider] w[as] waiving FEHBA claims. [Provider] filed a second stipulation to further dispel any ambiguities regarding FEHBA claims. However, the [S]tipulations included statements and references to ERISA, even though ERISA was not a part of the appeal.

Continuing, the trial court observed that when the case returned to state court, La Blue filed a partial summary judgment motion seeking dismissal of Provider's claims involving both FEHBA and ERISA governed plans. In support of its motion, La Blue relied upon language in the Stipulations. In response, Provider filed the Motion to Revoke. In the Motion to Revoke, Provider sought to withdraw any language in the Stipulations regarding ERISA "to clarify any unintended consequences."

Summarizing the parties competing contentions (the same contentions they repeat in this appeal), the trial court observed:

> [Provider] allege[s] that any reference in the [S]tipulation[s] dismissing [its] claims related to ERISA-governed plan[s] was an obvious error of fact, and that [La Blue's] interpretation of the [S]tipulations would essentially force [Provider] to dismiss all of [its] damages in this case since almost all surgeries involved a patient with an ERISA-governed plan. [La Blue] argue[s] that [Provider's] attempt to now assert an

"error of fact" and injustice because the [S]tipulations no longer suit their litigation strategy. [La Blue] further assert[s] that [Provider's] current position is inconsistent with what [it] presented before the federal court, and contend that [Provider] did not make any "error of fact" at all; [Provider] simply miscalculated the ultimate impact of [its] voluntary stipulations.

Finally, the trial court concluded:

Louisiana courts will permit a judicial confession (such as a stipulation) to be revoked, but only when the confession was made based on an error of fact and when there has been no reliance on the confession. *Dolsen v. City of New Orleans*, 559 So.2d 50, 51 (La. A[pp.] 4[th] Cir. []1990). Further, [s]ummary judgment is rarely appropriate for disposition of a case requiring judicial determination of subjective facts such as intent, motive, malice, good faith[,] or knowledge. *Wise v. O'Neil*, [20-3 (La. App. 3 Cir. 6/17/20),] 299 So.[3]d 185, 191[].

Accordingly, the Court finds that [Provider's] contention that [it] had no intention to voluntarily dismiss the majority of [its] damages as [La Blue] suggest[s] precludes the instant Motion for Summary Judgment. The affidavit of Attorney James Garner who drafted the [S]tipulations, further suggest that the unintended consequences of the [S]tipulations were not contemplated by [Provider]. Additionally, both sides set forth different interpretations of the same stipulations which makes it not ripe for summary judgment. Dismissing all of [Provider's] claims related to patient transactions involving ERISA-governed plans would cripple [Provider's] case, and severely limit[] the reasons for filing the lawsuit in the first place.

On appeal, La Blue challenges three of the trial court's rulings: (i) denial of La Blue's partial summary judgment motion; (ii) grant of Provider's Motion to Revoke; and (iii) refusal to find judicial estoppel applies. The trial court's denial of La Blue's partial summary judgment motion is reviewed under a *de novo* standard.[21] Whereas, an abuse of discretion standard applies to both the trial court's grant of Provider's Motion to Revoke[22] and refusal to apply judicial estoppel.[23]

---

[21] *See Farrell v. Circle K Stores, Inc.*, 22-00849, p. 2 (La. 3/17/23), 359 So.3d 467, 471.

[22] *See Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1368-69 (5th Cir. 1983) (applying an abuse of discretion standard to rulings on revocation of a stipulation).

[23] *See New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (observing that judicial estoppel is an equitable doctrine that is invoked at a court's discretion).

The trial court's summary judgment ruling is supported by the record. In opposing the motion, Provider submitted multiple affidavits—two from its attorneys (one from Mr. Garner, who drafted the Stipulations; another from David Sherman, who has represented Provider in this matter since 2017, when the original petition was filed); and two from its managing partners (Drs. Sullivan and DellaCroce). All four affidavits included the following attestation:

- Should any interpretation lead to the conclusion that the Stipulations dismiss, forego, and/or waive damages to [Provider] for [its] treatment of patients with an ERISA-governed insurance policy, the language in the Stipulations concerning ERISA does not reflect the intent and purpose of the stipulation and constitutes error.

In his affidavit, Mr. Garner additionally attested as follows:

- The Stipulations were filed solely in a good faith effort to re-urge the waivers continuously asserted by [Provider] since the filing of the original Petition for damages in February of 2017[; and]

- The Stipulations were never intended to dismiss, forego, and/or waive the damages suffered by [Provider] for [its] treatment of patients with an ERISA-governed insurance policy available under Louisiana law.

La Blue, as the trial court observed, presented a different interpretation of the Stipulations. Citing the conflicting interpretation of the parties' intent regarding the Stipulations, the trial court denied the summary judgment motion. Based on our *de novo* review of the record, we cannot conclude the trial court erred. The record reflects a dispute between the parties regarding the intent behind the Stipulations.

As to the Motion to Revoke, the trial court stated the governing principle that a stipulation can be revoked when made based on an error of fact provided there has been no reliance on the stipulation. *See Dolsen*, 559 So.2d at 51.[24]

---

[24] Because Provider made the Stipulations in federal court, federal law applies. Nonetheless, federal law is the same as Louisiana law on the issue of the binding effect of a stipulation. *See Dolsen*, 559 So.2d at 51 (citing *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1187 (5th Cir.

La Blue contends that Provider did not stipulate to a fact; rather, Provider disclaimed certain claims altogether. La Blue stresses that the trial court, rather than point to any error of fact, observed that Provider "had no intention to voluntarily dismiss the majority of [its] damages" and did not contemplate "the unintended consequences of the [S]tipulations." The trial court's reasoning, La Blue contends, establishes that Provider did not establish an "error of fact," but rather, at best, an "error of judgment." Regardless, even if the Stipulations involved an error of fact, La Blue contends that granting the Motion to Revoke was still improper because La Blue relied on the Stipulations to its detriment. Absent the Stipulations, La Blue contends it would have maintained its right to litigate this case in federal court.

Provider counters that La Blue's argument that it relied on the Stipulations to its detriment is belied by the record. Provider emphasizes that when the Stipulations were made, the federal district court (Judge Morgan) had already rendered the First Remand Ruling, which contained an exhaustive analysis finding that Provider's state law claims were not preempted by ERISA. According to Provider, even after the Stipulations were made, La Blue continued to contest Provider's motion to remand. Judge Morgan's second remand order was based on a rejection of La Blue's other grounds for seeking to stay in federal court. Thus, contrary to La Blue's suggestion, Provider contends that the Stipulations regarding the ERISA-based plans did not result in the remand to state court.

The jurisprudence has observed that "[t]he trial court has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid

1987)); *see also* La. C.C. art. 1853 (providing that "[a] judicial confession . . . may be revoked only on the ground of error of fact").

manifest injustice . . . or where there is substantial evidence contrary to the stipulation." *Rathborne Land Co. v. Ascent Energy, Inc.*, 610 F.3d 249, 262-63 (5th Cir. 2010) (internal quotations and citations omitted).[25] Such is the case here. The substantial evidence to the contrary is the context in which the Stipulations were made. As the trial court observed and Provider points out, the ERISA-governed plans were not at issue before the federal district court when Provider made the Stipulations. La Blue's argument of reliance to its detriment on the Stipulations is belied by the record. Moreover, the severe consequences that La Blue's construction of the Stipulations would produce—dismissal of over 90% of Provider's damage claims—supports a finding of manifest injustice. Accordingly, whether the trial court granted the Motion to Revoke based on an error of fact or a finding of manifest injustice, its ruling was not an abuse of discretion.

La Blue additionally contends that federal judicial estoppel and due process—the guarantee of "fundamental fairness" in judicial proceedings—prohibit Provider from revoking the Stipulations. According to La Blue, once Provider successfully convinced the federal district court to remand the 2017 Suit based on the Stipulations, federal judicial estoppel prohibited Provider from disavowing the Stipulations in state court.

Provider counters by citing the trio of factors courts consider in determining whether to apply judicial estoppel, which are as follows:

- The party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position;

---

[25] *See also Brinson v. Tomlinson*, 264 F.2d 30, 34 (5th Cir. 1959) (citations omitted) (observing that "[j]ustice sometimes requires that stipulations made under misapprehension or without full knowledge of all the facts, or as the result of mistake, be set aside").

28

- A court accepted the prior position; and

- The party did not act inadvertently.

*Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (reformatted).

Provider contends that even assuming the first factor is present, the second two factors are not. According to Provider, the federal district court did not rely on the Stipulations; and Provider acted inadvertently. Provider, thus, contends that the trial court did not abuse its discretion in refusing to apply judicial estoppel. We agree.

Judicial estoppel is "an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Miller* v. *Conagra, Inc.,* 08-0021, p. 9 (La. 9/8/08), 991 So.2d 445, 452 (citing *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001)).[26] The "circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle" and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* (quoting *New Hampshire,* 532 U.S. at 750-51) (internal quotations omitted).

We find the context in which the Stipulations were made establishes the trial court did not abuse its discretion in refusing to apply judicial estoppel here. When Provider made the Stipulations, the only issue before the federal district court related to FEHBA. As discussed elsewhere in this opinion, the federal district court, before the Stipulations were made, already had rendered a ruling—the First

---

[26] Because Provider filed the Stipulations in federal court, federal judicial estoppel principles apply. Nonetheless, federal law is the same as Louisiana law on this issue. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1046 (9th Cir. 2004); *Webb v. Webb*, 18-0320, p. 17 (La. 12/5/18), 263 So.3d 321, 332.

Remand Ruling—containing an exhaustive analysis relating to ERISA preemption. The First Remand Ruling found that Provider's state law claims were not preempted by ERISA. Thus, ERISA was not before the federal district court when the Stipulations were made.

For all the reasons noted above, we likewise find La Blue's contention that the trial court's ruling on the Motion to Revoke violated constitutional due process unpersuasive. Provider has been pursuing the same claims involving ERISA-governed patient transactions since it filed this suit in 2017. The trial court's ruling on the Motion to Revoke simply allowed Provider to continue pursuing those same claims. In sum, we find La Blue's arguments regarding revoking the Stipulations unpersuasive.

Complete and conflict preemption

La Blue next contends that even if Provider could permissibly revoke the Stipulations, complete and conflict ERISA preemption apply and preclude Provider's claims. To place this argument in context requires an understanding of the difference between complete and conflict ERISA preemption. Explaining the difference, the federal Fifth Circuit has observed:

> ERISA may occupy a particular field, which results in complete preemption under 29 U.S.C. § 1132(a). *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). "Section 502 [1132(a)], by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). Complete preemption permits removal to federal court because the cause of action arises under federal law. *See id. . . .*

> In contrast, ERISA preempts a state law action under 29 U.S.C. § 1144(a) when it conflicts with the state law. *Bullock v. Equitable Life Assur. Soc. of U.S.*, 259 F.3d 395, 399 (5th Cir. 2001). Conflict preemption does not allow removal to federal court but is an affirmative

> defense against claims that are not completely preempted under Section 1132(a). *Giles*, 172 F.3d at 337.

*Ellis v. Liberty Life Assur. Co. of Bos*., 394 F.3d 262, 275 n.34 (5th Cir. 2004).

**Complete preemption**

Judge Morgan in the First Remand Ruling exhaustively addressed the issue of whether complete preemption applies here. An entire section of the First Remand Ruling is entitled "[t]he Court concludes there is not complete preemption under ERISA"; this section is quoted elsewhere in this opinion.

On appeal, La Blue contends that the First Remand Ruling is not controlling for two reasons: (i) it was vacated by the federal appellate court on La Blue's appeal; and (ii) it was an incorrect ruling. According to La Blue, a determination of the medical necessity of a particular procedure is not the equivalent of a representation that benefits will be paid to cover the cost of that procedure. Rather, a medical-necessity determination, La Blue contends, is but the first step in the process to determine the coverage of a procedure under a patient's insurance plan. La Blue's obligation to pay for any services covered by the relevant ERISA-governed plans arises only from those benefit plans. The state-claim label Provider gives its claim is not controlling for purposes of complete preemption. La Blue, thus, contends that complete preemption applies here.

Provider counters that Judge Morgan's First Remand Ruling remains valid, that her ruling is correct, and that we should follow it. Citing the trial court's observation in denying La Blue's exception of no cause of action on the ERISA preemption issue, Provider points out that nothing has changed since Judge Morgan's First Remand Ruling. We find Provider's argument persuasive and decline La Blue's invitation to revisit the complete preemption issue—a removal

31

issue. But, Judge Morgan only addressed complete preemption; hence, La Blue's conflict preemption argument remains.

**Conflict preemption**

La Blue argues that Provider's litigation claims—fraud and abuse of rights—are barred by ERISA conflict preemption, which (as relevant here) preempts any state law that "may now or hereafter relate to" any ERISA plan.[27] A state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan."[28] That standard preempts any state-law claim that implicates: [i] a "central matter of plan administration";[29] [ii] "interferes with nationally uniform plan administration";[30] or [iii] "produce[s] such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers."[31] Any one of these three grounds is sufficient for conflict preemption. According to La Blue, Provider's litigation claims do all three.

First, La Blue contends that Provider's litigation claims implicate central matters of benefit plan administration, both by effectively seeking to alter the benefit levels the relevant benefit plans provide—by forcing the benefit plans to cover out-of-network providers' full billed charges—and by dramatically altering

---

[27] 29 U.S.C. §1144(a) (providing that "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

[28] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

[29] *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001).

[30] *Id.*

[31] *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995) ("*Travelers*").

the legal consequences of pre-treatment authorizations. *See Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.*, 103 F.4th 597, 605 (9th Cir. 2024) (observing that "[s]ubjecting plan administrators to the prospect of binding contracts through pre-treatment calls would … risk stripping [administrators] of their ability to enforce plan terms that cannot be applied prior to treatment" and that this is precisely "the kind of intrusion on plan administration that ERISA's preemption provision seeks to prevent").[32]

Second, La Blue contends that Provider's litigation claims would destroy nationally uniform plan administration. If out-of-network providers could use state law to bind insurers to pay the billed charges for any preauthorized treatment, regardless of the actual terms of the governing benefit plan, "benefits would be governed not by ERISA and the plan terms, but by innumerable phone calls and their variable treatment under state law." *Bristol*, 103 F.4th at 605. La Blue contends that ERISA preemption precludes state law from requiring that kind of patchwork approach to benefit plan administration.

Third and finally, La Blue contends that even if (contrary to fact) Provider's claims did nothing but increase costs, the "acute . . . economic effects" of the dramatic cost increases that Provider's theory would require (by guaranteeing all out-of-network providers their full billed charges) would still trigger ERISA conflict preemption by forcing ERISA plans "to adopt a certain scheme of substantive coverage." *Travelers*, 514 U.S. at 668.

_____

[32] S*ee also Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, 2024 WL 2813721, at *2 (2d Cir. June 3, 2024) (summary order) (observing that "because any legal duty Cigna has to reimburse PAPC arises from its obligations under the patient's ERISA plan, and not from some separate agreement or promise, PAPC's claims are expressly preempted by ERISA §514(a)").

Conversely, Provider contends that La Blue cannot establish that its litigation claims are impermissibly connected to ERISA plans. In support, Provider cites *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 87 (2020), which held that a state law that "merely affects costs," is permitted. *Id.*[33] Provider points out that following *Rutledge*, courts have held that state-law claims—like Provider's litigation claims—affect costs, at most, and thus are not impermissibly connected to ERISA plans. *See Emergency Physician Servs. of N.Y. v. Unitedhealth Grp., Inc.*, 749 F. Supp.3d 456, 470 (S.D.N.Y. 2024) (observing that "[i]f successful, the [providers'] unjust enrichment claim would 'merely increase costs'"). Provider contends that here, as in the line of cases following *Rutledge*, its litigation claims merely increase ERISA plan costs without requiring payment of specific benefits. Because "cost uniformity was almost certainly not an object of pre-emption," this cost increase does not establish an impermissible connection to ERISA. *Rutledge*, 592 U.S. at 88 (quoting *Travelers*, 514 U.S. at 662)).[34] Provider, thus, contends that the trial court did not err in finding conflict preemption does not preclude its litigation claims.

There is support in the jurisprudence for both sides' positions. La Blue's position finds support in the *Bristol* line of cases. *See Healthcare Ally Mgmt. of*

---

[33] In *Rutledge*, the Supreme Court held ERISA did not preempt an Arkansas law requiring pharmacy benefits managers to reimburse pharmacies for prescription drugs at a particular rate, finding the law "merely a form of cost regulation." *Id.*, 592 U.S. at 88.

[34] Provider also contends that La Blue cannot show that its litigation claims "refer to" ERISA plans. "[S]tate laws that treat ERISA and non-ERISA plans evenhandedly do not 'refer to' ERISA plans for preemption purposes." *Emergency Physician Servs. of N.Y.*, 749 F. Supp.3d at 468. Provider contends that Louisiana's doctrines of fraud and abuse of rights apply evenhandedly to Provider's litigation claims for treatment of patients having both ERISA and non-ERISA plans, and thus this requirement is not met. *Id.* at 470 (out-of-network emergency providers' state-law unjust enrichment claim that insurer failed to pay the reasonable value of services rendered did not "refer to" ERISA plans because it "applie[d] evenhandedly to both ERISA and non-ERISA plans").

*Cal., LLC v. United Healthcare Servs., Inc.,* 2024 WL 3915364, at *1 (C.D. Cal. July 15, 2014) (observing that *Bristol* "clarifies" that ERISA preempts state law misrepresentation and promissory estoppel claims based on allegations that the "provider was not paid the reimbursement rates promised by Defendant on the [verification] call"), *aff'd*, No. 24-5178, 2025 WL 3485391 (9th Cir. Dec. 4, 2025). Likewise, the following observation by a commentator supports La Blue's position:

> Out-of-network providers continue to argue that the preauthorization process creates a separate contract/obligation on the part of the plan to pay them. . . . Two Appellate Courts[—*Bristol* and *; Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, No. 23-1134-CV, 2024 WL 2813721, at *2 (2d Cir. June 3, 2024)[35]—] reached the same result. Both cases involved out-of-network providers that sued alleging that the preauthorization obligated the plans to pay the amount billed by the providers. The bases of their lawsuits were an estoppel theory and breach of contract. However, both claims were dismissed on the grounds that ERISA preempted those claims. To allow those types of claims would eliminate ERISA's preemption rules.

Paul J. Routh, WELFARE BENEFITS GUIDE § 3:76, n.6, *Pre-admission certification* (Nov. 2025 Update).

On the other hand, Provider's position is supported by a recent Nevada Supreme Court case: *UnitedHealthCare Ins. Co. v. Fremont Emergency Servs. (Mandavia), Ltd*, 570 P.3d 107 (2025), *cert. denied sub nom. Unitedhealthcare Co. v. Fremont Emergency*, No. 25-452, 2025 WL 3620468 (U.S. Dec. 15, 2025). In *UnitedHealthCare*, an out-of-network provider—TeamHealth—asserted an unjust enrichment claim against an insurer—United. TeamHealth's unjust enrichment claim arose out of its allegedly being underpaid for providing emergency medical

---

[35] *See Park Ave. Podiatric Care*, 2024 WL 2813721, at *2 (observing that "any legal duty Cigna has to reimburse PAPC arises from its obligations under the patient's ERISA plan, and not from some separate agreement or promise, PAPC's claims are expressly preempted by ERISA § 514(a)").

services to United's insureds. The Nevada Supreme Court held that TeamHealth's

unjust enrichment claim was not conflict preempted because this was a suit

involving the rate of reimbursement for emergency services;[36] the Court further

observed:

> [T]his case involves the costs of services. United never disputed its duty to provide some reimbursement to emergency medicine providers. Likewise, United identifies no wholesale change to the administration of its nationwide policies because of TeamHealth's lawsuit.
>
> We are also not convinced the recent cases highlighted by United dictate a different conclusion. *See Bristol SL Holdings, Inc. v. Cigna Health & Life Ins.,* 103 F.4th 597, 604 (9th Cir. 2024); *Park Ave. Podiatric Care, PLLC v. Cigna. Health & Life Ins*., No. 23-1134-cv (L), 23-1135-cv (Con), 2024 WL 2813721 (2d Cir. June 3, 2024). Both *Bristol* and *Park Avenue* concern the obligation to out-of-network providers following preauthorization for nonemergency services.
>
> Unlike in *Bristol* and *Park Avenue* where the payment disputes arose from nonemergency care, here, EMTALA required TeamHealth to provide medical services regardless of insurance status. Additionally, this case does not present any argument of a preauthorization promise to pay under an insurance contract. The sole issue in this case is the rate of reimbursement for emergency services. As a result, this case does not present an issue of conflict preemption because "cost uniformity was almost certainly not an object of pre-emption." *Travelers*, 514 U.S. at 662, 115 S.Ct. 1671. TeamHealth's claims are not conflict preempted under traditional preemption analysis.

*Id.,* 570 P.3d at 118. The holding in *UnitedHealthCare* supports Provider's

position that conflict preemption does not preclude its litigation claims.

Given the conflicting case law on the conflict preemption issue, we decline

to find Provider's claims precluded by ERISA conflict preemption. Accordingly,

we find no error in the trial court's finding that neither complete nor conflict

ERISA preemption apply to preclude Provider's litigation claims.

---

[36] The Nevada Supreme Court also found complete preemption inapplicable given the case was a suit involving the amount of payment.

**Evidentiary and Jury Instructions Issues**

The gist of the second group of issues La Blue raises on appeal is that a *de novo* review of the jury's fraud finding is necessary for two reasons: (i) the trial court improperly excluded evidence; and (ii) the trial court failed to include an essential element of fraud—justifiable reliance—in its jury instructions.[37] Stated otherwise, La Blue contends that because of the erroneous evidentiary rulings coupled with the erroneous jury instructions on fraud, the *de novo*, as opposed to the manifest error, standard of review applies. Provider counters that there are no evidentiary errors, that the trial court's jury instructions were correct, and that a manifest error standard applies here.

An appellate court reviews a trial court's factual findings under the manifest error standard. *See Jones v. Cap. Enters., Inc.*, 11-0956, p. 10 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 483 (citations omitted). But, the manifest error standard assumes that the jury, as the fact finder, applied the correct law. *Rathey v. Priority EMS, Inc.*, 04-0199, p. 27 (La. App. 4 Cir. 1/12/05), 894 So.2d 438, 458-59. If the jury applied the incorrect law because of erroneous jury instructions or interrogatories, the appellate court "must determine if the error could have affected the jury's decision. If so, the manifest error standard does not apply; rather, the *de novo* standard" does. *Id.*, 04-0199, pp. 27-28, 894 So.2d at 459; *see also Guidry v. Bank of LaPlace*, 94-1758, p. 9 (La. App. 4 Cir. 9/15/95), 661 So.2d 1052, 1058. Such is the case here.

---

[37] La Blue's argument that the trial court erroneously instructed the jury on the fraud claim has a second part. It argues that the trial court also failed to instruct that, in cases alleging fraud by silence, the plaintiff must establish a duty to speak. Given our finding that the first part of La Blue's argument has merit, we pretermit addressing this second part of its argument.

The jurisprudence, however, has recognized that in certain circumstances a remand for a new trial, rather than a *de novo* review, is the more appropriate course of action. *See Wegener v. Lafayette Ins. Co.*, 10-0810, 10-0811, pp. 19-20 (La. 3/15/11), 60 So.3d 1220, 1233-34 (recognizing that a "*de novo* review is not the best course of action in every case" and citing *Ragas v. Argonaut Southwest Ins. Co.*, 388 So.2d 707, 708 (La. 1980)). Given the unique circumstance presented here, we conclude, for the reasons discussed elsewhere in this opinion, that the interest of justice dictates we remand for a new trial. *See* La. C.C.P. art. 2164.[38]

*Jury instructions and interrogatories*

Jury instructions are governed by La. C.C.P. art. 1792, which provides that the trial court "shall instruct the jurors on the law applicable to the cause submitted to them." La. C.C.P. art. 1792(B). "In making charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the applicable law in light of the facts of the particular case." *Lavigne v. Allied Shipyard, Inc.*, 18-0066, 18-0077 (La. App. 4 Cir. 1/15/20), 289 So.3d 1088, 1103 (internal citations and quotations omitted).

Summarizing the principles that govern appellate review of jury instructions for error, a commentator has observed:

- Generally, an appellate court must use great restraint before overturning a jury verdict based on erroneous jury instructions[;]

- A trial court's judgment in formulating jury instructions will not be reversed provided the charge correctly states the substance of the law[;]

---

[38] La. C.C.P. art. 2164 provides as follows:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

- If a trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error[;]

- When deciding whether an error in an instruction constitutes reversible error, an appellate court must determine if there was a likelihood that the instruction probably contributed to the jury verdict[; and]

- Specifically, the reviewing court must assess the alleged impropriety in light of the entire jury charge to determine if they adequately provided the correct principles of law as applied to the issues framed in the pleadings and evidence and whether they adequately guided the jury to the extent that it was prevented from dispensing justice.

Roger A. Stetter, LA. PRAC. CIV. APP. § 10:107, *Standards of review for jury trials—Jury instructions and interrogatories* (Aug. 2025 Update) (internal citations omitted and reformatted). The Louisiana Supreme Court has observed that "the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice." *Adams v. Rhodia, Inc.*, 07-2110, p. 7 (La. 5/21/08), 983 So.2d 798, 804 (citing *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 8 (La. 8/31/00), 765 So.2d 1017, 1023).

Akin to jury instructions, jury interrogatories (jury verdict forms) may not be set aside unless they are so inadequate that the jury is precluded from reaching a verdict based on the correct law and facts. *Georgia-Pac., LLC v. Dresser-Rand Co.*, 15-2002, p. 7 (La. App. 1 Cir. 10/31/16), 207 So.3d 1131, 1137. "Jury forms or interrogatories that are misleading or confusing may be reversible error." *Id.* (internal citation omitted). "Jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict." *Id.* "If the verdict form does not adequately set forth the issues to be decided by the jury (*i.e.*, omits an applicable essential legal principle or is misleading and confusing), such

interrogatories may constitute reversible error." *Id*., 15-2002, p. 7, 207 So.3d at 1137-38.

Procedurally, "[a] party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection." La. C.C.P. art. 1793(C); *see also Yokum v. Funky 544 Rhythm & Blues Cafe*, 16-1142, p. 5 (La. App. 4 Cir. 5/23/18), 248 So.3d 723, 731. "'A party's failure to timely object, for the record, with specificity, constitutes a waiver of the objection.'" *Lavigne,* 18-0066, 18-0077, pp. 18-19, 289 So.3d at 1103 (quoting *Berrera v. Hyundai Motor Am. Corp.*, 620 So.2d 890, 893 (La. App. 4th Cir. 1993)). The same rule applies to jury interrogatories (verdict forms). *See Deykin v. Ochsner Clinic Found.*, 16-488, p. 6, (La. App. 5 Cir. 4/26/17), 219 So.2d 1234, 1239. Here, the record reflects that La Blue made a timely objection to the trial court's proposed jury instructions and interrogatories (verdict form) regarding the essential elements of fraud.

During the last week of the three-week trial, the trial court held a charge conference, which was not transcribed. Two days later (the day before closing arguments), La Blue filed written objections to the trial court's proposed jury instructions and interrogatories (verdict form). In its written objections, La Blue represented that it was "formally memorializing [its] objections as orally raised during the Parties' September 17, 2024 Charge Conference." La Blue explained that the trial court provided the parties with its proposed jury instructions on the day before the charge conference. The trial court's proposed instructions included

the following three paragraphs addressing Provider's fraud claim—Paragraphs 24-26:

24. Fraud is a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud may also result from silence or inaction.

25. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence.

26. There are two elements necessary to prove legal fraud: an intent to defraud and resulting damages.

In its written objections, La Blue argued that the trial court's proposed instructions and associated verdict form[39] failed to sufficiently instruct the jury on the essential elements of fraud and lacked necessary explanations of the meaning of those instructions. La Blue submitted the following proposed jury instructions and interrogatories (verdict form) on the fraud claim—Paragraphs 24-30:

24. Fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." [La. C.C. art. 1953.] To succeed on a claim for fraud, [Provider] bear[s] the burden of proving, by a preponderance of the evidence, all of the following [three] elements:

   (1) A misrepresentation of a material fact;
   (2) Made with the intent to deceive; and
   (3) Causing a justifiable reliance with resulting injury. [*See Becnel v. Grodner*, 07-1041, p. 3 (La. App. 4 Cir. 4/2/08), 982 So.2d 891, 894].

25. With respect to the first element of [Provider's] claim for fraud, a fact is "material" only if a reasonable person would think the fact was important to making a decision in the transaction in question. When the party against whom the fraud was directed could have learned the truth without difficulty, inconvenience, or special skill, a finding of fraud does not take away consent. [*See* La. C.C. art. 1954].

---

[39] La Blue's written objections did not include the trial court's proposed interrogatories (verdict form) on fraud. As discussed elsewhere in this opinion, the trial court ultimately only submitted to the jury a single interrogatory on the fraud claim, which read: "Do you find that [Provider] proved, by a preponderance of the evidence, that [La Blue] committed fraud?"

26. With respect to the second element, [Provider] must prove that [La Blue] had a specific intent to deceive [Provider]. A person intends something when he subjectively wants it to happen, or when he must have realized to a virtual certainty that it would happen. If you find that [La Blue] made a mistake or was merely negligent, that is insufficient to prove the claim of fraud. Stated differently, if you find [La Blue] made any misrepresentations of material fact, you must focus on whether this misrepresentation made by [La Blue] w[as] deliberate and knowing and whether [La Blue] concealed evidence of the misrepresentation from [Provider].

27. With respect to the third element, [Provider] must show that [it] w[as] damaged by relying on incorrect information allegedly supplied by [La Blue]. [It] must also show that [its] reliance on that information was justifiable. In order for [Provider's] reliance to be justified you must find that it was reasonable. Whether [Provider's] reliance is reasonable is determined by examining all of the factual circumstances, including the commercial sophistication of [Provider], the nature of the statements [Provider] relied upon, and whether [Provider] could have ascertained the truth without difficulty, inconvenience, or special skill based on [its] commercial sophistication.

28. For [Provider] to show that [it] w[as] damaged by [La Blue's] alleged intent to deceive by providing incorrect information, [Provider] must show that [it] changed [its] position because of the incorrect information, or that [it] would have acted differently had it been supplied the correct information by [La Blue]. Moreover, for fraud or deceit to have caused [Provider's] damage, [it] must show that had [it] known the truth, [it] would not have acted as [it] did. [Provider] cannot rely solely on an argument that [La Blue] had a moral duty to do or to not do something.

29. [Provider] may not recover any damages you find are not attributable to [LHS or HMO La. (collectively La Blue)] the only two named Defendants in this case. Stated differently, you may not award [Provider] any damages you find attributable to any entity or individual other than [La Blue], including any other Blue Cross Blue Shield Association members [(Home Plans)], who have not been sued in this lawsuit.

30. If you believe that [Provider] ha[s] failed to establish any one of these elements is more likely true than not true, then [Provider] [is] not entitled to recover, and you should return a verdict for [La Blue].

**JURY VERDICT FORM**

**FRAUD CLAIM**

42

**Interrogatory No. 1:**

Ha[s] [Provider] proven by a preponderance of the evidence that [La Blue] made a misrepresentation or omission of material fact to [Provider]?

> **Answer No. 1:**
>
> Please indicate your answer to this interrogatory by checking either "Yes" or "No" below:
>
> "Yes" _____ or "No" _____
>
> *If you answered "no" to this question, you may not award any damages for [Provider's] Fraud Claim and should proceed to Interrogatory No. 5 ([Provider's] Abuse of Right[s] Claim); if you answered "yes" to this question, please proceed to Interrogatory No. 2.*

**Interrogatory No. 2:**

Ha[s] [Provider] proven by a preponderance of the evidence that [La Blue] made this misrepresentation or omission of material fact with the intent to deceive [Provider]?

> **Answer No. 2:**
> Please indicate your answer to this interrogatory by checking either "Yes" or "No" below:
>
> "Yes" _____ or "No" _____
>
> *If you answered "no" to this question, you may not award any damages for [Provider's] Fraud Claim and should proceed to Interrogatory No. 5 ([Provider's] Abuse of Right[s] Claim); if you answered "yes" to this question, please proceed to Interrogatory No. 3.*

**Interrogatory No. 3:**

Ha[s] [Provider] proven by a preponderance of the evidence that [Provider's] reliance on [La Blue's] misrepresentation or omission of material fact was reasonable?

> **Answer No. 3:**
>
> Please indicate your answer to this interrogatory by checking either "Yes" or "No" below:
>
> "Yes" _____ or "No" _____

*If you answered "no" to this question, you may not award any damages for [Provider's] Fraud Claim and should proceed to Interrogatory No. 5; if you answered "yes" to this question, please proceed to Interrogatory No. 4.*

**Interrogatory No. 4:**

Ha[s] [Provider] proven by a preponderance of the evidence that [Provider] would have acted differently if [La Blue] had not made this misrepresentation or omission of material fact?

**Answer No. 4:**

Please indicate your answer to this interrogatory by checking either "Yes" or "No" below:

"Yes" _____ or "No" _____

*If you answered "no" to this question, you may not award any damages for [Provider's] Fraud Claim; if you answered "yes" to this question, you must award damages for [Provider's] Fraud Claim in Interrogatory No. 10(a). Regardless of how you answered this question, please proceed to Interrogatory No. 5 [Provider's Abuse of Rights Claim].*

Rejecting La Blue's proposed instructions and interrogatories (verdict form) on the fraud claim, the trial court instructed the jury using its proposed instructions—Paragraphs 24-26, quoted elsewhere in this opinion and repeated below:

Fraud is a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud may also result from silence or inaction.

Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence.

There are two elements necessary to prove legal fraud: an intent to defraud and resulting damages.

And, the trial court's verdict form submitted to the jury included only the following single interrogatory on the fraud claim:

Do you find that [Provider] proved, by a preponderance of the evidence, that [La Blue] committed fraud?

"Yes"_____          or          "No" _____

The jury answered yes.

*Parties' positions on jury instructions issue*

La Blue contends that the trial court's jury instructions misstated the law. The trial court's instructions stated that a fraud claim requires a plaintiff to prove only two essential elements—(i) an intent to defraud; and (ii) resulting damages. According to La Blue, the correct statement of the law is that a fraud claim requires a plaintiff to prove three essential elements—(i) a misrepresentation of material fact; (ii) the misrepresentation was made with the intent to deceive; and (iii) the misrepresentation caused justifiable reliance with resultant injury. *See Becnel v. Grodner*, 07-1041, p. 3 (La. App. 4 Cir. 4/2/08), 982 So.2d 891, 894. La Blue submits that the trial court's omission, over La Blue's strong objection, of the third element—justifiable reliance—is reversible error. La Blue further contends that it was prejudiced by this error and that this error interdicted the fact-finding process. According to La Blue, a properly instructed jury would have found no justifiable reliance and, thus, no fraud.

Conversely, Provider contends that the trial court's jury instruction tracks the language of La. C.C. art. 1953[40]—the code article that defines fraud—and mirrors the Louisiana Supreme Court's holding that "[t]here are two elements necessary to prove legal fraud: an intent to defraud and a resulting damage." *Lomont v. Bennett*, 14-2483, p. 12 (La. 6/30/15), 172 So.3d 620, 629. Provider

---

[40] La. C.C. art. 1953 provides that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction."

further contends that the jurisprudence has upheld jury instructions on La. C.C. art. 1953 (fraud) that lacked justifiable reliance as an element. *See Adams v. Canal Indem. Co.*, 99-1190, p. 5 (La. App. 3 Cir. 5/10/00), 760 So.2d 1197, 1200-01.[41]

Resolution of the jury instructions issue turns on whether Louisiana law requires a plaintiff prove justifiable reliance to establish a delictual fraud claim. *See Duvio v. Specialty Pools Co.*, 15-0423, p. 21 (La. App. 4 Cir. 6/16/16), 216 So.3d 999, 1014 (quoting *Adams v. Rhodia, Inc.*, 07-2110, p. 6 (La. 5/21/08), 983 So.2d 798, 804) (observing that "[a] [jury] charge is appropriate if it 'correctly states the substance of the law'").

*Justifiable reliance is an element of a tort claim for fraud in Louisiana*

The parties couch the jury instructions issue as turning on the number of elements a delictual fraud claim under Louisiana law requires—two, as Provider contends and the trial court instructed the jury; and three, as La Blue contends. But, it is not the number of elements or how those elements are formulated that matters; rather, it is the substance of what a plaintiff must prove to establish a fraud claim that matters. As a commentator has observed:

> Intentional misrepresentation is often called fraud or fraudulent misrepresentation. Scienter or knowing fraud means the same. Courts list anywhere from four to nine elements of the common law claim for such misrepresentations. However the elements are formulated, courts agree in substance that the plaintiff must prove the following elements:
>
> (1) an intentional misrepresentation
>
> (2) of fact

---

[41] In *Adams*, the jury was instructed as follows:

> Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. . . . Additionally, the law authorizes proof of fraud by circumstantial evidence, including highly suspicious facts and circumstances.

99-1190, p. 5, 760 So.2d at 1200-01.

(3) that proximately causes harm and

(4) is material,

(5) intended to induce and

(5) does induce reliance by the plaintiff,

(6) which is reasonable or "justifiable."

Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, THE LAW OF TORTS § 664, *Fraudulent (intentional) misrepresentation: elements and burdens* (2d ed. April 2025 Update) (internal footnotes omitted).[42] Simply stated, the jurisprudence reflects that, regardless of how the elements are numbered or formulated, a delictual claim for fraud under Louisiana law requires a plaintiff prove justifiable reliance.

Other litigants—like Provider—have argued that Louisiana law does not require a showing of justifiable reliance when alleging a claim for delictual fraud. Rejecting that argument, the federal district court in *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 485781, at *3 (E.D. La. Feb. 7, 2019), observed:

> Defendants correctly point out that Louisiana courts have been inconsistent with explicitly naming justifiable reliance as an element of

---

[42] Another commentator likewise has observed the vast differences, even within single jurisdictions, over the number of elements a fraud claim is stated to require—ranging from less than three, to as many as eleven; the commentator explains this observation as follows:

> A vast group of modern cases, both from the standpoint of total number and from the variety of commercial fact situations covered, runs through the various American reports as to the essential and requisite elements to state a claim or cause of action for fraud (and deceit). There is a certain sameness as to these essential elements in total, but the cases vary widely in the number of elements and as to their detail. In addition, in this connection, it should be noted and kept in mind that, occasionally, even within a particular jurisdiction, the number and detail of these elements may vary. In some states, 11 elements are held to be requisite; in others, 10 (approximately), nine, eight, seven, six (approximately), five (approximately), four (approximately), and three—or less.

10 Charles F. Krause, *et al.*, AMERICAN LAW OF TORTS § 32:19, *Generally* (Feb. 2025 Update). The commentator groups Louisiana in the "three—or less" category, citing *Lomont*, 14-2483, p. 12, 172 So.3d at 629.

this claim. *Compare Williamson v. Haynes Best Western of Alexandria*, 688 So.2d 1201, 1239 (La. App. 4[th] Cir. 1997) ("Two elements are necessary to prove fraud: an intent to defraud and actual or potential loss or damages."), with *Becnel*, 982 So.2d at 894 ("To recover under a cause of action in delictual fraud, a plaintiff must prove three elements: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury."). Federal courts applying Louisiana law, by contrast, routinely include justifiable reliance as a distinct element of the claim. *See, e.g., Kadlec* [*v. Med. Ctr. v. Lakeview Anesthesia Assocs.*], 527 F.3d [412,] 418 [(5th Cir. 2008)]; *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 (5th Cir. 1993); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1131 n.33 (5th Cir. 1988).

But defendants wrongly conclude from these slight discrepancies that they are not required to assert that they at one point believed plaintiffs' alleged misrepresentations, and acted to their detriment because of that belief. The court in *Sun Drilling Products Corporation v. Rayborn*, [00-1884, pp. 15-16 (La. App. 4 Cir. 10/3/01)], 798 So.2d 1141, 1152-53 [], explained:

> Two elements are necessary to prove fraud: (1) an intent to defraud and (2) actual or potential loss or damage. Federal courts applying Louisiana law indicate that reliance is an element of a claim for fraud. Moreover, for fraud or deceit to have caused plaintiff's damage, he must at least be able to say that had he known the truth, he would not have acted as he did to his detriment. Whether this element is labeled reliance, inducement, or causation, it is an element of a plaintiff's case for fraud.

*Id.* [00-1884, pp. 15-16, 798 So.2d] at 1152-53 (internal citations omitted). As this quotation makes clear, it is immaterial whether Louisiana courts always explicitly list justifiable reliance as an element. They nonetheless recognize that a party asserting fraud is required to allege that it was unaware that the opposing party's representation was false, and that the misrepresentation caused it to act differently than it would have had it known the truth.

*Id.*[43]

---

[43] *See also Hunters Run Gun Club, LLC v. Baker*, No. CV 17-176-SDD-EWD, 2019 WL 3400696, at *6 (M.D. La. July 26, 2019); *Stoke v. City of New Orleans*, 25-0258, p. 9 (La. App. 4 Cir. 12/17/25), ___So.3d ___, ____, 2025 WL 3653403, *17 (quoting *Thomas, supra*, and observing that "'a party asserting fraud is required to allege that it was unaware that the opposing party's representation was false, and that the misrepresentation caused it to act differently than it would have had it known the truth.'").

Echoing the federal district court, commentators have observed that, under Louisiana law, a delictual tort claim of fraud—sometime labelled deceit—requires proof of three essential elements—"[i] The defendant must have made a false statement of fact with the intent to gain an unfair advantage or to cause a loss or inconvenience to another; [ii] The misrepresented fact must be material; and [iii] There must be reasonable reliance and damages." Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW §2-6(j), *Fraud*. (2d ed. 2018).[44] In support of the third element of justifiable reliance, the commentators cite La. C.C. art. 1954, which provides:

> Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.
>
> This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations.

The preceding Civil Code article, La. C.C. art. 1953,[45] defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction." Provider's contention that the trial court's jury instructions were sufficient because its instructions tracked the language of La. C.C. art. 1953 is unpersuasive. This Court, in *Sun Drilling Prods. Corp. v. Rayborn*, 00-1884 (La. App. 4 Cir. 10/3/01), 798 So.2d 1141, implicitly

---

[44] As former Justice (then federal appellate judge) Dennis summarized, "[t]he elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999).

[45] The definition of fraud, La. C.C. art. 1953, is located in "Title IV. Conventional Obligations or Contracts," "Chapter 4. Vices of Consent."

rejected that argument and expressly held that "for fraud or deceit to have caused [a complainant's] damage, he must at least be able to say that had he known the truth, he would not have acted as he did to his detriment." *Id.*, 00-1884, p. 16, 798 So.2d at 1153. This Court further observed that "[w]hether this element is labeled reliance, inducement, or causation, it is an element of a plaintiff's case for fraud." *Id.* Translated, this Court held, as the federal district court in *Thomas* observed, that justifiable reliance is a distinct element that must be proven to establish a delictual tort claim in Louisiana.

Alternatively, Provider contends that La Blue's argument regarding the detrimental reliance requirement is mooted by the trial court's inclusion in the jury instructions of the requirement of "resulting damage"—causation. According to Provider, this Court, in *Powell v. State Bd. of Certified Pub. Acct's of La.*, 21-0385, p. 13 (La. App. 4 Cir. 12/22/21), 366 So.3d 396, 404, observed that causation incorporates reliance. Provider, thus, contends that when the trial court instructed the jury on "resulting damage," it necessarily instructed the jury on reliance. We disagree.

This Court in *Powell* quoted the same language in *Sun Drilling* that the federal district court in *Thomas* quoted. Repeating, the quoted language ends with the conclusion that "[w]hether this element is labeled reliance, inducement, or causation, it is an element of a plaintiff's case for fraud." *Sun Drilling*, 00-1884, p. 16, 798 So.2d at 1153. This Court in *Powell*, thus, reiterated its holding in *Sun Drilling* that justifiable reliance is required regardless the label given that requirement.

Moreover, the justifiable reliance element is a distinct one from the "resulting damages" requirement that the trial court included in its instructions. As

a commentator observes, "[i]t is not enough that the defendant make a material, factual misrepresentation that causes injury to the plaintiff. The injury must come about by virtue of the plaintiff justifiably relying on the apparent truth of the misrepresentation." John C. P. Goldberg, *et. al.*, *The Place of Reliance in Fraud*, 48 Ariz. L. Rev. 1001, 1004 (2006).[46] Here, the trial court's jury instructions omitted any reference to the distinct requirement of justifiable reliance—an essential element of a delictual fraud claim.

Recapping, justifiable reliance is an essential element of a tort claim for fraud in Louisiana. It was legal error for the trial court to omit this essential element from its jury instructions on fraud. *See Nicholas*, 99-2522, p. 9, 765 So.2d at 1024 (observing that jury's verdict finding intentional infliction of emotional distress was interdicted when jury instructions failed to include "any reference to the requirement that the defendants' conduct be extreme and outrageous and that plaintiff's emotional distress be severe"). The Louisiana Supreme Court has observed that "[i]f the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error." *Adams*, 07-2110, p. 6, 983 So.2d at 804. Such is the case here.

The trial court's error in failing to instruct the jury on the justifiable reliance element was exacerbated by its submission to the jury of an inadequate verdict form—a single interrogatory asking the jury if there was fraud. A similar scenario

---

[46] *See also Prentice v. R.J. Reynolds Tobacco Co.*, 338 So.3d 831, 838 (Fla. 2022) (observing that "[i]n the common law of fraud, reliance is what establishes the necessary connection between a fraudulent representation and the plaintiff's injury. Put differently, regardless of the form of the defendant's fraudulent conduct, reliance is an indispensable aspect of proving causation in a fraud claim").

was presented in *Georgia-Pac., LLC v. Dresser-Rand Co*., 15-2002, p. 12 (La. App. 1 Cir. 10/31/16), 207 So.3d 1131, 1140. There, the appellate court observed:

> [T]he trial court's error in failing to instruct the jury on the applicable law was further compounded by the inadequacy of the jury's verdict form. The verdict form simply asked the jury whether either party "owe[d]" the other party and if so, how much, and did not ask the jury to make any specific underlying factual findings to support such a determination, such as a finding of breach and causation of damages. Thus, the verdict form did not point out any of the issues to guide the jury in reaching an appropriate verdict.

The appellate court, thus, concluded that "no weight should be afforded to the jury's verdict." *Id.* The same result is dictated by the record here.

Given our finding of prejudicial error, we must determine whether the appropriate course of action is a *de novo* review of the record or a remand for a new trial. As noted earlier, and explained below, we find it appropriate to remand for a new trial.

*Remand for a new trial*

The general rule is that when, as here, a legal error has interdicted the fact-finding process of the jury, "if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record." *Wegener*, 10-0810, 10-0811, p. 19, 60 So.3d at 1233. But, the Supreme Court recognized an exception to this general rule in *Ragas*, 388 So.2d at 708. Explaining the exception, the Supreme Court observed:

> This is not to say, and *Gonzales* [*v. Xerox Corp*., 254 La. 182, 320 So.2d 163 (1975)] should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.

*Ragas*, 388 So.2d at 708.

In *Wegener*, the Supreme Court cited La. C.C.P. art. 2164 as authorizing an appellate court to invoke the *Ragas* exception and to remand a case to the trial court for proper consideration when the interest of justice so requires. *Id.*, 10-0810, 10-0811, p. 20, 60 So.3d at 1233-34. There, the Supreme Court held that a remand for a new trial, rather than a *de novo* review, was appropriate due to prejudicial jury instructions regarding whether the plaintiffs—the Wegeners—were entitled to damages and penalties under La. R.S. 22:1220. *Id.*, 10-0810, 10-0811, p. 20, 60 So.3d at 1234.

In finding a remand for a new trial appropriate, the Supreme Court observed that "[w]hether a particular case should be remanded is a matter which is vested largely within the court's discretion and depends upon the circumstances of the case." *Wegener*, 10-0810, 10-0811, at p. 20, 60 So.3d at 1234 (citing *Alex v. Rayne Concrete Serv.*, 05-1457 (La. 1/26/07), 951 So.2d 138, 155). Applying that standard, the Supreme Court concluded:

> [U]nder the specific facts and circumstances of this case, and the particular legal errors involved, a remand of the case for a new trial is dictated. The issues affected by the legal errors are damages and penalties under La. R.S. 22:1220, primary components of the Wegeners' case. Whether the Wegeners suffered mental distress as a result of Lafayette's adjustment of their insurance claim, and whether the Wegeners are entitled to penalties due to Lafayette's breach of its duties under this statute are both issues which are affected greatly by the credibility of the plaintiffs and the claims personnel from Lafayette. We find these issues necessarily require the fact finder to examine first-hand the witnesses' demeanor and testimony. We cannot, by examination of the cold record alone, properly determine the issues involved.

*Wegener*, 10-0810, 10-0811, p. 20, 60 So.3d at 1234. Citing the *Ragas* exception, the Supreme Court concluded that the interest of justice was best served by remanding the case for a new trial.

Applying the above principles here, we find it appropriate to remand for a new trial, rather than conduct a *de novo* review, given the unique circumstances of this case. This case involves a fraud claim, which by its nature requires the fact finder examine first-hand the witnesses' demeanor and testimony. Neither the trial court nor the jury determined the fact-driven, essential element of justifiable reliance, which is pivotal to this case. Moreover, the nature and magnitude of the underlying dispute at issue here make deciding the issues presented on a cold record impossible. For all these reasons, we conclude that this case falls into the category of cases in which the interest of justice requires a retrial. *Wegener*, 10-0810, 10-0811, at 20, 60 So.3d at 1234; *see also Georgia-Pac.,* 15-2002, pp. 12-13, 207 So.3d at 1140 (observing that "[d]ue to the substantial conflict in testimony concerning the pertinent issue in this case, a preponderance of the evidence cannot be determined fairly from the cold record" and that "the interests of justice would best be served by a new trial where credibility determinations and resolutions of the conflicting testimony can be made by the finder of fact").[47]

---

[47] The following is a collection of cases in which appellate courts have invoked the *Ragas* exception and remanded for a new trial:

- *Abney v. Smith*, 09-0794, p. 12 (La. App. 1 Cir. 2/8/10), 35 So.3d 279, 287 (reasoning that "[b]ecause a preponderance of the evidence cannot be determined fairly from the cold record due to the substantial conflict in testimony on the condition of the single stop sign situated in the right-of-way that buttressed the gas station, remand is proper in this case");

- *Palumbo v. Shapiro*, 11-0769, p. 12 (La. App. 4 Cir. 12/14/11), 81 So.3d 923, 930 (reasoning that "we cannot conduct a *de novo* review, but must instead remand the matter for a new trial because a view of the witnesses is essential to a fair resolution of the conflicting evidence. Specifically, the remaining defendants, especially Mr. Pigg and Mr. Bartels, hold to the position that they cannot be liable for malpractice because they never entered into an attorney-client relationship with Palumbo");

- *Delo Reyes v. Liberty Mut. Fire Ins. Co.*, 08-0769, pp. 4-5 (La. App. 4 Cir. 2/18/09), 9 So.3d 890, 893 (reasoning that "[t]he plaintiffs complain of debilitating injuries, similar to injuries sustained in a previous automobile accident, while the defendants are contesting the issue of negligence as well as causation" and finding that "the allegations and defenses in the case *sub judice* are of a nature that necessitates the witnesses'

Because of our holding that the trial court committed reversible error in its jury instructions on fraud, we pretermit La Blue's other challenges to the fraud liability basis of the verdict and judgment. Moreover, the jury interrogatories were not framed to allow the jury to allocate its damage award between the fraud and abuse of rights claims; rather, the jury was asked to give one lump sum award. As a result, our finding of legal error on the fraud claim requires that we reverse the entirety of the jury's award.[48]

## **DECREE**

For the foregoing reasons, the judgment of the trial court is reversed; and this matter is remanded to the trial court for a new trial.

**REVERSED; REMANDED FOR NEW TRIAL**

---

credibility be taken into account to such a degree that rendering a just verdict on a cold record would not be possible");

- *Hoffman v. Paracelsus Elmwood Med. Ctr., Inc.,* 03-0659, p. 17 (La. App. 4 Cir. 9/1/04), 881 So.2d 796, 807 (reasoning that "the weight of the evidence is so nearly equal that a firsthand view of the witnesses is essential to a fair resolution of the issues"); and

- *Diez v. Schwegmann Giant Supermarkets, Inc.*, 94–1089, pp. 9-10 (La. App. 1 Cir. 6/23/95), 657 So.2d 1066, 1071-72) (reasoning that a remand was appropriate in slip-and-fall case in which credibility of the witnesses was pivotal given the testimony of the defendant's employees and others involved in assisting after the plaintiff's fall occurred was the only available proof and that the court would not "attempt to make credibility determinations on the cold record and thus deprive plaintiffs of their right to present their case before a trier of fact").

[48] We pretermit all of La Blue's other assignments of errors that were not addressed in this opinion, including its evidentiary errors and the third group of issues its raises—its substantive proof and damages issues.